IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

HOLLY LOU S.,

                          Plaintiff,

          v.                                    Civil Action No.
                                                3:20-CV-0597 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
250 South Clinton Street              JULIE ATKINS, ESQ.
Syracuse, New York 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                AMELIA STEWART, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

        Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, ineligible for the disability insurance ("DIB") benefits for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in December of 1968, and is currently fifty-two years of age. She was forty-seven years old at her alleged onset date of disability of August 31, 2016, and at the time of her application for benefits in October of 2016. Plaintiff stands five-foot and two inches in height, and has weighed at various times relevant to this decision between two hundred forty-four and two hundred sixty-five pounds. Plaintiff resides in a double-wide mobile home with her husband and her nine-year-old granddaughter, who she is raising like a daughter.

Plaintiff has a high school education with no history of special education, although she did receive one-on-one tutoring in school. She also completed certificate programs for clerical skills, travel, and tourism,

and obtained an associate's degree in medical office assisting from Elmira Business Institute.  Plaintiff reported that she has no trouble reading, writing, or doing basic math, and no difficulty understanding or comprehending what she reads and writes.  Plaintiff has a driver's license and does drive.

Plaintiff reports that she stopped working in September 2016.  Prior to that time, she worked as a secretary in a medical office, and previously, as a laborer who assembled tools.

Physically, plaintiff alleges that she suffers from sleep apnea and pain in her neck that extends into her left shoulder and both arms, and that causes headaches.  Plaintiff has received injections related to that pain, which have helped alleviate both her neck pain and her headaches.  During the relevant period, plaintiff treated for her neck pain and related symptoms with Dr. Roger Schenone and Dr. Vidyasagar Mokureddy at Arnot Health.

Mentally, plaintiff alleges that she suffers from depression, anxiety, and panic attacks.  Plaintiff has received treatment for her mental conditions in the form of medication, therapy, and visits with a psychiatrist. During the relevant period, plaintiff treated for her mental impairments with St. Joseph's Hospital, where she received inpatient care for a suicide attempt in September 2016, and Family Services of Chemung County,

3

where she was seen by Dr. Joseph Touchstone, among others.

Plaintiff has been prescribed several medications over time including, though not limited to, Ambien, Cymbalta, Latuda, Paxil, Wellbutrin, Prozac, Provigil, Trazadone, Gabapentin, Lofentanil, Lantus, and Metformin.

Plaintiff has reported that she can clean, do laundry, and cook meals (although her husband does the majority of those chores), help care for multiple pets, and assist her daughter with homework. She has no problems with personal care tasks such as dressing or bathing, although she reported that her husband helps her take off her shirt because of her neck pain. Plaintiff can ride in a car and go shopping with her husband and daughter. Plaintiff uses a pill box to remember to take her medications, and her husband helps remind her to take her insulin. She is able to pay bills, count change, and handle a savings account. Plaintiff's activities include crocheting, swimming, and walking in her yard in moderation. She also watches television, but is not able to follow along with the story lines. She cannot lift more than ten or twenty pounds and cannot lift over her head, but does not have much trouble standing, walking, or sitting for long periods of time. She has a service dog to help her with her anxiety when out in public.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on October 19, 2017.  In support of that application, she alleged a

disability onset date of August 31, 2016, and claimed to be disabled based

on depression, neck problems, headaches, diabetes, thyroid problems,

migraines, and high cholesterol.

A hearing was conducted on November 30, 2018, by ALJ Robyn L.

Hoffman, to address plaintiff's application.  Following that hearing, ALJ

Hoffman issued an unfavorable decision on January 15, 2019.  That

opinion became a final determination of the agency on March 31, 2020,

when the Social Security Appeals Council ("Appeals Council") denied

plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential

test for determining disability.  At step one, she found that plaintiff had not

engaged in substantial gainful activity during the relevant period.  At step

two, ALJ Hoffman found that plaintiff suffers from severe impairments that

impose more than minimal limitations on her ability to perform basic work

functions, including a major depressive disorder, an unspecified anxiety

disorder, bipolar disorder, diabetes mellitus, obstructive sleep apnea, and

cervical degenerative disc disease status post a 2010 discectomy surgery.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.04, 3.14, 12.04, and 12.06.

ALJ Hoffman next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light work,[1] as defined by the controlling regulations, with the following exceptions:

> mentally, the claimant retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention/concentration for simple tasks;

---

[1]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a).

and regularly attend to a routine and maintain a schedule. She can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. She can also handle simple, repetitive work-related stress, in that she can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require her to supervise or manage the work of others.

At step four, ALJ Hoffman concluded that plaintiff is unable to perform the demands of any of her past relevant work based on her RFC. Proceeding to step five, the ALJ found that the additional mental limitations do not preclude plaintiff from performing all of the basic mental requirements of unskilled work outlined in Social Security Ruling ("SSR") 85-15 on a sustained basis and do not reduce the occupational base of unskilled light work that plaintiff remains able to perform. She therefore found that Medical-Vocational Guideline Rules 202.21 and 202.14 direct a finding that plaintiff is "not disabled." Based upon these findings, ALJ Hoffman concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on June 1, 2020.[2] In support of her

---

[2] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ failed to properly consider and weigh the opinions from treating physician Dr. Touchstone, consultative examiner Dr. Slowik, and state agency psychiatric consultant Dr. Kamin, and failed to account for their opined limitations in her RFC determination; (2) the ALJ failed to reconcile a finding, using the regulatorily-prescribed psychiatric review technique, that plaintiff was moderately limited in the area of interacting with others with the RFC, in which she failed to incorporate such moderate limitation; (3) the ALJ erred in failing to properly evaluate plaintiff's subjective allegations regarding her symptoms; (4) the ALJ erred in relying on the Medical-Vocational Guidelines for her step five finding rather than eliciting the testimony of a vocational expert because the existence of nonexertional limitations made use of the Guidelines inappropriate; (5) the portion of the ALJ's RFC finding related to her physical capabilities is not supported by any opinion from a medical source; and (6) the ALJ failed to properly consider whether a limitation relating to the need for a service dog should have been included in the RFC.

Oral argument was conducted in this matter, by telephone, on November 9, 2021, at which time decision was reserved.

III.    <u>DISCUSSION</u>

A.    <u>Scope of Review</u>

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

    The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his

> previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    ALJ Hoffman's Analysis of Plaintiff's Mental RFC

In assessing the mental component of plaintiff's RFC, the ALJ afforded the medical opinions of consultative examiner Dr. Amanda Slowik, state agency psychological consultant Dr. Edward Kamin, and treating

physician Dr. Joseph Touchstone "at least some weight," in that they supported a finding that plaintiff "retains the ability to perform simple, unskilled work on a sustained basis," but explicitly rejected any opined marked limitations in those opinions.  AT 17.

Based on her examination of plaintiff, Dr. Slowik opined that she had no limitation in her ability to follow and understand simple directions and instructions; mild limitation in her abilities to perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks independently and make appropriate decisions; and moderate-to-marked limitation in her abilities to maintain a regular schedule, relate adequately with others, and appropriately deal with stress. AT 341.

After reviewing the record available at the time, Dr. Kamin opined that plaintiff had moderate limitation in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set

realistic goals or make plans independently of others.  AT 66-68. He opined

overall that plaintiff was capable of performing the basic demands of

unskilled work.  AT 67.

Dr. Touchstone, plaintiff's treating physician, opined that she had

marked limitation in her abilities to maintain attention and concentration for

extended periods, complete a normal workweek without interruptions from

psychologically based symptoms and travel in unfamiliar places or use

public transportation; moderate limitation in her abilities to understand and

remember detailed instructions, carry out detailed instructions, perform

activities within a schedule, maintain regular attendance, be punctual within

customary tolerances, complete a normal workday without interruptions

from psychologically based symptoms, interact appropriately with the

general public, accept instructions and respond appropriately to criticism

from supervisors, get along with coworkers or peers without distracting

them or exhibiting behavioral extremes, respond appropriately to changes

in the work setting, and set realistic goals or make plans independently of

others; and slight limitation in her abilities to remember locations and work-

like procedures, understand and remember very short and simple

instructions, carry out very short and simple instructions, sustain an

ordinary routine without special supervision, work in coordination with or in

14

proximity to others without being distracted by them, make simple work-related decisions, perform at a consistent pace with a standard number and length of rest periods, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions.  AT 490-92.

I find that the ALJ's assessment of the opinion evidence, when formulating the mental RFC, was not sufficiently clear.  Although the ALJ did explicitly indicate that she was declining to adopt any marked limitations in those opinions, she failed to resolve – or at least failed to explain her resolution of – a number of inconsistencies among those three opinions, and between those three opinions and her RFC determination.  Indeed, the ALJ failed to indicate the extent of her reliance on any of these individual opinions, instead merely grouping them together and noting that she afforded all of them "at least some weight," despite their significant differences.  Such a generic and vague statement provides no indication as to whether she relied on any of those opinions more heavily than another, or why she rejected certain limitations in any of those opinions that are more limiting than the RFC.  Given that all three of these opinions contain differing and somewhat conflicting assessments of plaintiff's mental

functional abilities – most notably, limitations in social functioning – and that they also contain limitations that appear to be more restrictive than accounted for by the RFC, such a cursory analysis is not consistent with the regulations, which require that the ALJ specify the degree to which she relied on individual medical opinions, provide reasons for that weight, and set forth her reasoning in sufficient detail to permit meaningful judicial review.  *See Anderson v. Comm'r of Soc. Sec.*, 18-CV-6353, 2019 WL 2295404, at \*4 (W.D.N.Y. May 30, 2019) (finding that ALJ's affording "some weight" to all three opinions without explaining how he reconciled conflicts between those opinions frustrated the court's ability to undertake a meaningful review of the ALJ's decision and required remand); *Robert L.M. v. Berryhill*, 18-CV-0208, 2018 WL 5313452, at \*6 (N.D.N.Y. Oct. 26, 2018) (Suddaby, C.J.) (noting that affording "at least some weight" to all of the opinions in the record was vague, but finding any error in doing so was harmless because the ALJ had not failed to account for any limitations in those opinions).  The ALJ was also required to reconcile any inconsistencies between her RFC and any opinion on which she purported to rely, if such opinion contains limitations greater than the RFC – something which was not done in this instance.  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 235 (N.D.N.Y. 2012) (Suddaby, J.; Bianchini, M.J.) (finding

remand required where the ALJ purported to afford significant weight to a physician's opinion, but failed to explain why he excluded greater limitations contained in that opinion from the RFC).

As to plaintiff's social functioning in particular,[3] this failure to reconcile makes it unclear why the ALJ failed to account for seemingly greater opined limitations. The only social limitations included in the RFC is a specification that plaintiff "can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks" and is not required to supervise or manage others. AT 15. However, the ability to interact with others "to the extent necessary to carry out simple tasks" is itself vague and

---

[3]    As to moderate limitations related to areas other than social functioning, the content of the ALJ's decision and findings allow a factfinder to glean how she reconciled the opinions with respect to those other limitations. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that "[w]hen, as here, the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); *Cheryl A. v. Comm'r of Soc. Sec.*, 19-CV-1438, 2021 WL 1022442, at *3 (W.D.N.Y. Mar. 17, 2021) (finding no error in the ALJ's failure to explain the rejection of some limitations in an opinion to which he afforded great weight because the decision allowed the court to glean the reasons why the ALJ implicitly rejected those limitations); *Lambert v. Comm'r of Soc. Sec.*, 13-CV-0500, 2016 WL 11477502, at *6 (N.D.N.Y. Mar. 7, 2016) (Carter, M.J.) (finding that the ALJ's decision provided sufficient evidence and reasoning to show that his mental RFC was supported by substantial evidence even if he did not explicitly explain why he rejected a portion of the treating physician's opinion). For example, the ALJ explicitly found that plaintiff was capable of performing unskilled work and cited reasons and evidence supporting that finding. Additionally, the ALJ's rationale for rejecting the limitation in Dr. Touchstone's opinion that plaintiff would be absent three times per month – that her treatment notes as a whole did not reflect a pattern of missing or arriving late to scheduled appointments – also explains why she implicitly rejected moderate limitations related to plaintiff's ability to attend to routine and maintain a schedule.

does not specify how much interaction plaintiff would be capable of having throughout the workday. By including such a limitation, the ALJ has not quantified plaintiff's ability to interact with others, but merely restated her limitation to the performance of simple tasks under the guise of stating a limitation in social interaction; in effect, this is no different than merely stating that plaintiff is able to perform simple tasks. The ALJ's failure to specify the weight afforded to the opinion evidence in a clear enough manner to determine whether she was properly justified in failing to include more specific or greater limitations in plaintiff's ability to interact with others is error.

Although finding that the ALJ erred, I conclude that this error is harmless. The ALJ ultimately concluded that plaintiff is capable of performing unskilled work, which has been noted to involve dealing primarily with objects rather than data or people. *See Michael G. v. Comm'r of Soc. Sec.*, 20-CV-0605, 2021 WL 2457637, at \*9 (N.D.N.Y. June 16, 2021) (Hummel, M.J.); *Nunez v. Colvin*, 15-CV-4957, 2017 WL 684228, at \*11, 17 (S.D.N.Y. Feb. 21, 2017); *DeGraw v. Colvin*, 13-CV-0782, 2014 WL 3038279, at \*6 (N.D.N.Y. July 3, 2014) (Sharpe, C.J.). There is ample authority for the proposition that a limitation to frequent or even occasional interaction with the public, coworkers, and supervisors

would not erode the occupational base of unskilled work to any significant

degree, and thus vocational expert testimony is not necessary to assess

the impact of such a limitation. *See Denno v. Comm'r of Soc. Sec.*, 16-CV-

1411, 2017 WL 5496069, at *10 (N.D.N.Y. Oct. 6, 2017) (Carter, M.J.)

(finding that it was appropriate for the ALJ to rely on the Grids because the

RFC determination that plaintiff could frequently interact with coworkers

and supervisors and occasionally interact with the general public had little

or no effect on the occupational base for unskilled work); *Cook v. Comm'r*

*of Soc. Sec.*, 15-CV-6408, 2017 WL 4409484, at *12 (W.D.N.Y. Oct. 4,

2017) (noting that the basic mental demands of unskilled work actually do

not require any interaction with the public (only related to supervision and

coworkers) and that a limited capacity to work with coworkers on tasks

would not significantly limit the occupational base of unskilled light work);

*Wasiewicz v. Colvin*, 13-CV-1026, 2014 WL 5465451, at *6-7 (W.D.N.Y.

Oct. 28, 2014) (finding that the ALJ was not required to consult a vocational

expert because an RFC for a range of light work with no more than

occasional contact with the public, coworkers and supervisors would have

little or no effect on the occupational base of unskilled light work); *see also*

*Vincent K.-B v. Saul*, 20-CV-0157, 2021 WL 535052, at *5 (N.D.N.Y. Feb.

12, 2021) (Stewart, M.J.) (finding that a limitation to only occasional contact

with others was supported by opinions indicating moderate limitation in relating adequately with others).  Because the case law suggests that moderate limitations related to social functioning would have little or no effect on the base of unskilled work, the inclusion of such limitations as opined by the medical sources here[4] would not have impacted the ALJ's findings at step five in that they would not have precluded reliance on the Grids, and therefore any such error is harmless.

Finally, I recommend a finding that the ALJ did not err in failing to afford controlling weight or greater deference to the opinion of Dr. Touchstone. Under the former regulations applicable here by virtue of plaintiff's filing date, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, or, if not, what degree of weight it is otherwise entitled to by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019). Plaintiff's arguments that the ALJ erred in failing to rely to a greater extent

---

[4]     Notably, even though Dr. Slowick opined a moderate-to-marked limitation in one area related to social interaction, the ALJ explicitly found that any opined marked limitations were inconsistent with the record.  AT 17.

on Dr. Touchstone's opinion are essentially a request to reweigh the evidence considered by the ALJ. However, after a thorough review of the record as a whole, I am confident that the ALJ's conclusion that portions of Dr. Touchstone's opinion were inconsistent with the record – including his opinions that she would be absent three times per month on average and had some marked limitations – is supported by substantial evidence, despite the existence of some evidence to the contrary that might suggest a greater limitation. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (noting that "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision"). As a result, the ALJ has provided good reasons for declining to afford controlling or greater weight to Dr. Touchstone's opinion, and a "searching review of the record" assures me that the treating physician rule was not disregarded or improperly considered. *See Estrella*, 925 F.3d at 95-96 (stating that, although it is procedural error for the ALJ to fail to explicitly apply all of the relevant factors when assigning weight to a medical source, such error is harmless if a "searching review of the record assured us that the substance of the treating physician rule was not traversed").

For all of the aforementioned reasons, I recommend that plaintiff's

arguments regarding the ALJ's assessment of the mental opinion evidence and the mental RFC be rejected.

### 2.    ALJ Hoffman's Analysis of Plaintiff's Physical RFC

In formulating the physical component of her RFC finding, the ALJ concluded that plaintiff is capable of performing light work based on the objective medical evidence, her treatment history, and her reported activities and abilities.  AT 16.  Plaintiff argues that this finding is contrary to law and not supported by substantial evidence because the record lacks any opinion related to her physical functioning, and thus the ALJ inappropriately relied on her own interpretation of raw medical data and failed to develop the record.  Dkt. No. 16, at 24-25.

As to plaintiff's argument that the absence of an opinion required the ALJ to develop the record, plaintiff has failed to argue, much less show, how the absence of an opinion created a gap in the record that rendered the ALJ unable to appropriately assess her physical functioning.  The Second Circuit has recognized that the absence of an opinion that the ALJ finds reliable does not necessarily create a gap in the record requiring further development.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where, however, 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,'

. . . a medical source statement or formal medical opinion is not necessarily required.") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); citing *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013)); *Robert R. v. Comm'r of Soc. Sec.*, 19-CV-0680, 2020 WL 5531551, at *8 (N.D.N.Y. Sept. 15, 2020) (Dancks, M.J.) (finding no error where the ALJ rejected the opinions of records because he had sufficient evidence from the treatment record, objective findings from the consultative examination, and the plaintiff's own testimony to find that the plaintiff could perform the demands of a reduced range of light work).  In *Monroe*, the Second Circuit found that the ALJ's rejection of the only opinion of record did not create a gap in the administrative record because the ALJ relied on years of treatment notes from that same physician in formulating the RFC.

In this case, the ALJ explicitly noted that she relied on the objective medical evidence, plaintiff's treatment history, and her reported activities in making the physical RFC finding.  AT. 16.  The ALJ detailed relevant portions of the treatment record regarding plaintiff's diabetes, sleep apnea, and cervical spine impairment, including that injections worked well to relieve her pain, that a single imaging test showed some moderate stenosis, and that clinical examinations were largely unremarkable with no noted neck tenderness, normal range of motion, and an unimpaired gait.

23

AT 16.

The ALJ's interpretation of the evidence as a whole is reasonable. Although plaintiff did undergo fusion surgery and a discectomy on her cervical spine prior to the relevant period, imaging evidence from July 2, 2015, shows only an old disc protrusion at the C3-C4 level that caused mild spinal canal stenosis and moderate left paracentral and foraminal stenosis, and endplate spurring with a small central disc protrusion at C6-C7.  AT 280.  Imaging of plaintiff's left shoulder from the same date shows mild acromioclavicular osteoarthritis and rotator cuff tendinopathy.  AT 279.  On May 8, 2016, plaintiff reported that her back and neck discomfort had significantly improved since receiving epidural and trigger point injections, and that her headaches had resolved.  AT 306.  She received another spinal injection on July 19, 2016, at which time she was observed as having essentially normal physical functioning other than a positive result on a Spurling's test.  AT 335.  On May 31, 2017, plaintiff reported to Dr. Schenone that her neck "is still a problem but not as much" and the physical examination revealed no abnormalities.  AT 499-501.  On August 31, 2017, Nurse Practitioner ("NP") Jessica McDermott observed that plaintiff had full range of motion in her neck.  AT 495.  Dr. Schenone found, on December 22, 2017, that plaintiff had no musculoskeletal or neurological

abnormalities.  AT 504-05.  Indeed, although the record indicates that plaintiff's spinal symptoms did not completely abate, she reported that they had improved significantly with treatment, and there is no evidence to support that she suffered from any limitations that would be inconsistent with an ability to perform the exertional demands of light work.  Given the fact that the evidence does not substantiate significant limitations, I find that the ALJ had sufficient evidence before her to conclude that plaintiff remained capable of performing light work even in the absence of a medical source opinion.

I note, moreover, that the ALJ did not merely interpret raw medical data in concluding that plaintiff could perform the demands of light work, instead relying on the medical evidence as a whole, plaintiff's treatment, and plaintiff's own statements that were consistent with the other evidence. *See Smith v. Comm'r of Soc. Sec.*, 17-CV-0488, 2018 WL 1684337, at *6 (N.D.N.Y. Apr. 5, 2018) (Suddaby, C.J.) (noting that "[t]here is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter").  Weighing and considering medical treatment notes and the findings therein – including provider interpretations

of objective imaging – is within the province of the ALJ, and I discern

nothing in the ALJ's assessment that strays out of the bounds of a proper

analysis of the medical record.  *See Albert P. v. Comm'r of Soc. Sec.*, 20-

CV-6006, 2021 WL 2845298, at *4-5 (W.D.N.Y. July 8, 2021) (finding that

the ALJ's reliance on treatment notes and examination findings was not an

interpretation of raw medical data into functional terms, but rather a

permissible synthesis of "notes in the record that assessed Plaintiff's

limitations").

### 3.    The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff's argument that the ALJ failed to properly assess her

subjective complaints related to her physical impairments and symptoms is

similarly unavailing.  Undeniably, an ALJ must take into account subjective

complaints of pain in making the five step disability analysis.  20 C.F.R. §§

404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain,

however, the ALJ is not required to blindly accept the subjective testimony

of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*

*v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*).  Rather,

an ALJ retains the discretion to evaluate a claimant's subjective testimony,

including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180,

185-86 (2d Cir. 1984).  When such testimony is consistent with and

supported by objective clinical evidence demonstrating that claimant has a

medical impairment which one could reasonably anticipate would produce

such pain, it is entitled to considerable weight.[5]  20 C.F.R. §§ 404.1529(a),

416.929(a); SSR 16-3p.  If the claimant's testimony concerning the

intensity, persistence or limiting effects associated with his or her pain is

not fully supported by clinical evidence, however, then the ALJ must

consider additional factors in order to assess that testimony, including (1)

daily activities, (2) location, duration, frequency and intensity of symptoms,

(3) precipitating and aggravating factors, (4) type, dosage, effectiveness

and side effects of any medications taken, (5) other treatment received,

and (6) other measures taken to relieve symptoms.  20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

 If the ALJ finds that a claimant's subjective testimony should be

rejected, he or she must explicitly state the basis for doing so with sufficient

particularity to enable a reviewing court to determine whether those

reasons for disbelief were legitimate and whether the determination is

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing

---

[5] In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 432(d)(5)(A).

*Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's

decision need not contain a discussion of all of the potentially relevant

factors listed above, so long as it is clear from the decision that the ALJ

considered all of the evidence and that he or she provided specific reasons

for his or her determination as to the intensity, persistence, and limiting

effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x

71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not

require remand because the ALJ provided specific reasons for his

determination "and the record evidence permits us to glean the rationale of

the ALJ's decision"). Where the ALJ's findings are supported by

substantial evidence, the decision to discount subjective testimony may not

be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human

Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

As was discussed above, the medical and other evidence simply

does not support the degree of restriction in movement or use of plaintiff's

neck and arms that plaintiff alleges. Notably, the ALJ relied on the

objective medical evidence, plaintiff's treatment history, and her reported

activities and abilities when finding that she is capable of performing light

work, and found that the medical evidence, treatment history, and

conflicting reports by plaintiff about her abilities and relief from treatment

did not corroborate plaintiff's more extreme reports of limitation, particularly those made in her testimony at the hearing.  I am therefore satisfied that the ALJ considered the relevant factors and engaged in a proper analysis of plaintiff's subjective complaints related to plaintiff's physical functioning. *See Timothy M. v. Kijakazi*, 20-CV-0310, 2021 WL 4307455, at *15 (N.D.N.Y. Sept. 22, 2021) (Sannes, J.) (finding the ALJ's rejection of plaintiff's subjective reports to be supported by substantial evidence where the ALJ considered not only the objective medical findings, but also the plaintiff's medications and treatment, and response to treatment); *Haddad v. Comm'r of Soc. Sec.*, 18-CV-0929, 2020 WL 597382, at *4 (W.D.N.Y. Feb. 7, 2020) ("The regulations provide that the ALJ may consider a claimant's daily activities and the extent to which there are conflicts between a claimant's statements and the rest of the evidence in assessing the claimant's subjective complaints.").

For these reasons, I recommend that plaintiff's argument regarding the evaluation of her subjective complaints be rejected.

### 4.    Plaintiff's Use of A Service Dog

Plaintiff lastly argues that the ALJ erred in failing to include – or even consider the need for – a limitation in the RFC that she requires her service dog to be present with her during work activity.  In support of her claim in

this regard, plaintiff points to her testimony at the hearing, during which she stated that she had her service dog for a year at the time of the hearing, that her treating physician, Dr. Schenone, recommended that she get a service dog, and that her service dog helps her to be around people and to prevent panic attacks related to being in public.  AT 42, 55-56.

Although it is true that the ALJ did not explicitly discuss why she found a service dog to be unnecessary as a work-related limitation, any such failure is at most harmless error.  The ALJ did note that plaintiff reported she has a service dog that accompanies her everywhere.  AT 15-16.  However, the ALJ also observed that treatment notes indicate plaintiff was engaged and interactive in therapy (including group therapy), and she reported activities that included going into public (such as going out to dinner, shopping, and taking trips to the craft store).  AT 15-16.  The ALJ therefore did not completely fail to acknowledge plaintiff's testimony regarding her service dog, but instead merely declined to credit it, just as she declined to accept the extent of plaintiff's other subjective reports as discussed above.

I note, moreover, that any failure to discuss plaintiff's service dog in greater detail is harmless, because no evidence in the record beyond plaintiff's testimony at the hearing supports her need for a service dog.

Although plaintiff testified that Dr. Schenone "recommended" a service dog, there is no evidence that a service dog was actually prescribed as treatment. *See Christian J. v. Comm'r of Soc. Sec.*, 18-CV-1004, 2019 WL 6840130, at *9 (N.D.N.Y. Dec. 16, 2019) (Baxter, M.J.) (finding that ALJ did not err in failing to include the need for a service dog in the RFC for multiple reasons, including that, although a physician supported plaintiff using a service dog, he did not actually prescribe the need for a service dog, and no medical opinion included that plaintiff required the assistance of a service dog to engage in substantial gainful employment); *see also Cardillo v. Colvin*, 16-CV-0134, 2017 WL 1274181, at *14 (N.D.N.Y. Mar. 24, 2017) (Hummel, M.J.) (noting that the ALJ may consider whether an aid such as a cane was prescribed by a physician when determining whether such an aid is medically necessary for work functioning, but finding the ALJ's failure to consider evidence from a physician that the cane in that case might be medically necessary was error).

Further, plaintiff's reported basis for requiring a service dog was to help prevent her from experiencing panic attacks when around people. The record, however, contains no indication – other than her own subjective reports – that plaintiff has experienced panic attacks, much less of a significant enough frequency or severity to indicate that the ALJ's

failure to more closely consider the need for a service dog to be harmful error. At the consultative examination with Dr. Slowik on January 23, 2017, plaintiff reported that she suffers from depression, is easily overwhelmed, that she experiences anxiety when she has to go to a new place and usually brings someone with her, and that her anxiety manifests as crying, irritability, and nausea; however, she did not report having had panic attacks involving heart palpitations, sweating, and rapid breathing. AT 42-43, 339. Plaintiff's treatment notes from November 2017 – approximately when plaintiff acquired her service dog, according to her testimony – and later do not mention plaintiff's service dog or panic attacks, and in fact indicate that, although plaintiff had "poor anxiety tolerance," she generally reported her anxiety was a 4/10 with her prescribed medications and she was encouraged "to use relaxation techniques to address residual anxiety symptoms." *See e.g.*, AT 598-601, 604-06, 610-14, 616-19, 622-25, 628-31, 634-37. Earlier treatment notes from group therapy in October, November, and December of 2016 indicate that plaintiff was participating actively in sessions and was "open and engaged" with the group. *See e.g.*, AT 380, 382, 383, 385, 388, 389, 391, 393.

For all of the above reasons, plaintiff has not met her burden to show that she requires a service dog to function in the workplace, and therefore

any failure of the ALJ to more explicitly discuss her failure to include the need for a service dog in the RFC is at most harmless error that does not require remand.  I therefore recommend that this last argument be rejected.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 20) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 16) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  November 17, 2021
        Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge