**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**HOLLY S.,**

                              **Plaintiff,**

   vs.                                                    **3:20-CV-597**
                                                                 **(MAD/DEP)**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

                              **Defendant.**

_____

**APPEARANCES:**                                      **OF COUNSEL:**

**OLINSKY LAW GROUP**                   **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street, Suite 210      **JULIE ATKINS, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **AMELIA STEWART, ESQ.**
J.F.K. Federal Building, Room 625       **HUGH DUN RAPPAPORT, ESQ.**
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Holly S. commenced this action on June 1, 2020, seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 1. In a Report and Recommendation dated November 17, 2021, Magistrate Judge Peebles recommended that the Court affirm the decision of the Commissioner and dismiss this action. *See* Dkt. No. 25. Currently before the Court are the Magistrate Judge's Report and Recommendation and Plaintiff's objections thereto.

## II. BACKGROUND

Plaintiff was born on December 10, 1968, and was forty-seven years old at her alleged onset date of disability of August 31, 2016. *See* Dkt. No. 13, Administrative Transcript ("Tr.") at 64. Plaintiff has a high school education and an associate's degree in medical technology. *See id.* at 41-42. She has also completed certificate programs in clerical skills and travel/tourism. *See id.* Plaintiff last worked as a full-time secretary at a medical center, but left in 2016 after she was hospitalized for a suicide attempt. *See id.* at 43-44. Plaintiff applied for DIB payments on October 19, 2016, claiming to be disabled due to depression, neck problems, headaches, diabetes, thyroid problems, migraines, and high cholesterol. *See id.* at 65. The application was denied and Plaintiff made a timely request for a hearing in front of an Administrative Law Judge ("ALJ"). That hearing was held before ALJ Hoffman on November 30, 2018. *See id.* at 34-62.

In a decision dated January 15, 2019, ALJ Hoffman determined that Plaintiff was not disabled under sections 216(i) and 223(d) the Social Security Act. *See id.* at 11-27. In her decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since August 31, 2016; (2) Plaintiff's severe impairments include major depressive disorder, unspecified anxiety disorder, bipolar disorder, diabetes mellitus, obstructive sleep apnea, and cervical degenerative disc disease; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (4) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b); (5) Plaintiff was unable to perform any past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *See id.* at 16-23. That opinion became a final determination of the Commissioner on March 31, 2020, when the

Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision. *See id.* at 5-10.

On June 1, 2020, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's unfavorable decision. *See* Dkt. No. 1. The matter was referred to United States Magistrate Judge Peebles for a report and recommendation. *See* Dkt. Nos. 8, 21. Magistrate Judge Peebles recommended that the Court affirm the decision of the Commissioner and dismiss this action. *See* Dkt. No. 25. On December 1, 2021, Plaintiff objected to the Report and Recommendation on three grounds: (1) the mental RFC adopted by the ALJ was not supported by substantial evidence; (2) Magistrate Judge Peebles incorrectly found that an articulation deficiency by the ALJ was harmless error; and (3) Magistrate Judge Peebles incorrectly found that the ALJ did not err in failing to afford controlling weight or greater deference to the opinion of Plaintiff's treating doctor. *See* Dkt. No. 26.

After carefully reviewing Plaintiff's objections, the Court declines to fully adopt the Report and Recommendation and remands this case for the reasons stated below.

### III. DISCUSSION

**A.      Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a claimant is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *see also Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (stating that the court "would be derelict in our duties if we simply paid lip service to this rule, while shaping [the Court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.    Analysis**[1]

---

[1] The Court finds that Plaintiff's objections are sufficiently specific to warrant *de novo* review of the Report and Recommendation.

### *1. The Weight Afforded to the Medical Opinions*

Plaintiff argues that it was "substantive error" for the ALJ to rely on the opinion of Dr. Kamin, a non-examining source, "in favor of both Dr. Touchstone, the treating source, and Dr. Slowik, the agency's examining source," because "[a]n ALJ generally must give greater weight to the medical opinions of treating and examining sources than to the medical opinions of non-treating and non-examining sources." Dkt. No. 26 at 2-4. In opposition, the Commissioner argues that Plaintiff failed to present any argument to Magistrate Judge Peebles that the ALJ improperly analyzed or relied upon Dr. Kamin's opinion and that, in any event, the ALJ relied on all the opinions, including both Dr. Touchstone and Dr. Slowik's. *See* Dkt. No. 27 at 2-4.

Initially, contrary to Plaintiff's characterization, it is not clear that the ALJ relied on Dr. Kamin's opinion "in favor of" Dr. Touchstone and Dr. Slowik's opinions. In her decision, the ALJ stated that she gave "*each* of the[] assessments at least some weight." Tr. at 21 (emphasis added). As Magistrate Judge Peebles aptly stated, that "generic and vague statement provides no indication as to whether [the ALJ] relied on any of those opinions more heavily than another, or why she rejected certain limitations in any of those opinions that are more limiting than the RFC." Dkt. No. 25 at 15.[2] Additionally, Plaintiff's argument—to the extent she asserts that the ALJ improperly analyzed or relied upon Dr. Kamin's opinion—appears to be unpreserved. Legal

---

[2] The parties do not contest Magistrate Judge Peebles' determination that the ALJ's failure to provide specific reasons for the weight given to each treating source's medical opinion, or to resolve conflicts between those opinions and the RFC, was error. The Court agrees with that determination. *See Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-6353, 2019 WL 2295404, *4 (W.D.N.Y. May 30, 2019) (holding that remand was required where the "ALJ gave 'some weight' to ... three [medical] opinions but offered no rationale for how he reconciled their conflicts"); *Fiducia v. Comm'r of Soc. Sec.*, No. 1:16-CV-1317, 2017 WL 4513405, *4 (N.D.N.Y. Oct. 10, 2017) ("When an ALJ's decision is not fully favorable to a claimant, the ALJ must provide specific reasons for the weight given to each treating source's medical opinion, supported by evidence in the case record, and must state the reasons for that weight"). Whether or not this error was harmless is addressed below, in section B(2).

arguments may not be raised for the first time in an objection to a magistrate judge's report and recommendation. *See Timothy B. v. Comm'r of Soc. Sec.*, No. 8:17-CV-0399, 2018 WL 3853999, *1 (N.D.N.Y. Aug. 14, 2018), *aff'd sub nom. Barnaby v. Berryhill*, 773 Fed. Appx. 642 (2d Cir. 2019); *Davis v. Comm'r of Soc. Sec.*, No. 15-CIV-6301, 2016 WL 3453452, *1 (S.D.N.Y. June 16, 2016); *Lamica v. Comm'r of Soc. Sec.*, No. 5:14-CV-1284, 2016 WL 900651, *1 (N.D.N.Y. Mar. 9, 2016); *Lewyckyj v. Colvin*, No. 3:13-CV-126, 2014 WL 3534551, *2 (N.D.N.Y. July 17, 2014).[3]

However, contained within this argument—and later argued separately by Plaintiff—is the preserved objection that the ALJ erred in failing to afford controlling weight to the opinion of Dr. Touchstone, the treating physician. *See* Dkt. No. 26 at 9-10. The Commissioner opposes this argument, asserting that the ALJ's rejection of certain portions of Dr. Touchstone's opinion as inconsistent with the record was supported by substantial evidence. *See* Dkt. No. 27 at 4, 9.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). However, the opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In that situation, "'the ALJ

---

[3] The Second Circuit has not yet addressed whether a party may raise a new legal argument for the first time before the district court after a magistrate judge's report and recommendation has been filed; indeed, rather than reject the party's argument outright, some district courts have chosen to apply a multi-factor test in deciding whether to exercise their discretion to consider such arguments. *See, e.g., Parks v. Comm'r of Soc. Sec.*, No. 15-CIV-6470, 2017 WL 3016946, *3 (S.D.N.Y. July 17, 2017). Because this matter is being remanded in any event, the Court declines to address the preservation issue in detail at this time.

must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see also* 20 C.F.R. § 404.1527(c). The ALJ must then "'comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "The failure to provide '"good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quotation omitted).

Here, it is apparent from the ALJ's decision that the ALJ did not afford the opinion of Dr. Touchstone controlling weight. Dr. Touchstone had found marked limitations in Plaintiff's ability to maintain attention and concentration for extended periods; complete a normal workweek without interruptions from psychologically based symptoms; and travel in unfamiliar places or use public transportation. *See* Tr. at 494-96. Although the ALJ does not name Dr. Touchstone specifically, the ALJ generally found that the record did not "support 'marked' limitations in any ... work-related mental functioning." *Id.* at 21. In support of that determination, the ALJ found that (1) Plaintiff's mental status exams "have been largely benign, even when dealing with her husband's illness and her daughter's behavioral issues"; and (2) Plaintiff's function report and testimony revealed that "she engage[d] in a variety of activities that are consistent with at least simple work." *See id.* The ALJ also found "no support for the proposed work absences"—Dr. Touchstone had opined that Plaintiff would be absent from work an average of three times per month—because "her treatment records do not reflect a pattern of her missing or arriving late for scheduled appointments." *Id.* The ALJ did not, however, "explicitly consider" several of the factors in 20 C.F.R. § 404.1527(c)—such as the frequency, length, nature, and extent of

treatment, or whether the physician was a specialist—and fell short of "comprehensively" setting forth her reasons for affording Dr. Touchstone's opinion only "some weight." *Greek*, 802 F.3d at 375.

Despite that procedural error, this Court agrees with Magistrate Judge Peebles' recommended finding that the error was harmless. Where an ALJ has failed to explicitly apply all of the relevant factors when assigning weight to a medical source, such error is harmless if "'a searching review of the record' assures [the court] 'that the substance of the treating physician rule was not traversed.'" *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). Here, a "searching review of the record" has assured this Court that the ALJ's determination not to afford the opinion of Dr. Touchstone controlling weight was supported by substantial evidence. Specifically, Plaintiff stated in her function report that, among other things, she was capable of cooking, cleaning, and doing laundry without help; taking care of her pets; handling her personal care without special help or reminders; and going shopping. *See* Tr. at 166-76. As the ALJ stated, these activities are consistent with an ability to do simple work. Furthermore, Plaintiff's medical status exams—conducted by Dr. Touchstone—recorded Plaintiff as presenting with logical and coherent thought processes, no delusions, normal speech, fair judgment, normal memory, either a good attention span and concentration or no evidence of problems with sustained attention/concentration. *See id.* at 561-640. There is no evidence that Plaintiff had difficulty attending these examinations on time. Taken together, this record evidence provides substantial support for the ALJ's determination not to credit Dr. Touchstone's marked limitation assessments or his estimation of Plaintiff's work absences. Although some other evidence in the record may support Plaintiff's view of the medical evidence, it is not the Court's function to reweigh the evidence on appeal; only to "decide whether substantial evidence supports the ALJ's

decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. Appx 58, 59 (2d Cir. 2013).

### 2. The Harmless Error Recommendation

Plaintiff also argues that the ALJ's failure to explain how the three medical opinions were weighed and factored into the RFC cannot be harmless error because the three medical opinions all found that Plaintiff had moderate restrictions in multiple areas of nonexertional functioning. *See* Dkt. No. 26 at 4-8. Plaintiff asserts that this is significant because, at the fifth step of the sequential analysis, the ALJ relied on the Medical Vocational Guidelines ("Grids"), rather than the testimony from a vocational expert, to determine whether there are jobs that she could perform that exist in sufficient numbers in the national economy. *See id.* Plaintiff alleges that an ALJ is *required* to hear testimony from a vocational expert where there are moderate restrictions in multiple areas of nonexertional functioning, because those restrictions "cannot reasonably be found to have little or no effect on the occupational base." *Id.* at 8. Plaintiff thus requests a remand for an appropriate explanation from the ALJ as to how the medical evidence was weighed and "regulatory-compliant vocational testimony to determine whether the combination of all of the moderate restrictions would eliminate jobs." *Id.* In opposition, the Commissioner argues that the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert and, here, "the ALJ could deny Plaintiff's claim using the Grid rules even if she had included all of the moderate social restrictions in the RFC." Dkt. No. 27 at 7.

At the fifth step, the ALJ must determine whether, based on the claimant's age, education, work experience, and RFC, the claimant could "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). As part of this analysis, the ALJ must determine whether there are jobs that the claimant could perform that exist in sufficient numbers in the national economy. *See* SSR 83-10, 1983 WL 31251, *4 (1983). In an "ordinary case," when the claimant has only exertional

impairments,[4] the ALJ may meet this burden by applying the Medical–Vocational Guidelines, also known as the Grids. *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986); *see also* SSR 83-11, 1983 WL 31252, *1 (1983) (instructing that use of the Grids to direct conclusion of "disabled" or "not disabled" is allowed only when the criteria of a rule in the Grids are "exactly met"). When a claimant experiences nonexertional limitations,[5] the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone. *See Bapp,* 802 F.2d at 605-06. The Second Circuit has explained that the ALJ may not solely rely on the Grids if a nonexertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian*, 708 F.3d at 421 (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). A nonexertional impairment is more than negligible "when it ... so narrows a claimant's possible range of work as to deprive [them] of a meaningful employment opportunity." *Zabala*, 595 F.3d at 411 (internal quotation marks omitted).

Whether expert testimony is required must be determined on a "case-by-case basis." *Bapp*, 802 F.2d at 605-06. "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603. In short, the ALJ may apply the Grids—without calling a vocational expert—if they "adequately reflect a claimant's condition." *Id.* at 605; *see also Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, *7 (W.D.N.Y. Nov. 23, 2015); *Kessler v. Colvin*, 48 F. Supp. 3d 578, 599 (S.D.N.Y. 2014).

---

[4] "Exertional limitations" are "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms" that affect his "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

[5] "Nonexertional limitations" include, *inter alia*, most mental impairments, such as depression, anxiety, an inability to concentrate, and difficulty understanding or remembering detailed instructions. 20 C.F.R. § 404.1569a(c)(1); SSR 85-15, 1985 WL 56857, *2 (1985).

Here, the medical opinions identified a number of moderate nonexertional limitations. Dr. Touchstone opined that Plaintiff had moderate limitation in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday without interruptions from psychologically based symptoms; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; and (9) set realistic goals or make plans independently of others. *See* Tr. at 494-96. Dr. Slowik opined that Plaintiff had moderate limitation in her ability to (1) maintain a regular schedule; (2) relate adequately with others; and (3) appropriately deal with stress. *See id.* at 345. Dr. Kamin opined that Plaintiff had moderate limitation in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) respond appropriately to changes in the work setting; and (7) set realistic goals or make plans independently of others. *See id.* at 71-72.

At step five of her analysis, the ALJ found that "the claimant's ability to perform the full range of light work has been compromised by additional mental limitations," and correctly determined that she would have to ascertain "the extent to which those ... limitations reduce[d] the occupational base of unskilled light work." Tr. at 23. The ALJ then concluded—without any analysis—that, "as discussed" in her RFC determination, "claimant's limitations do not preclude

11

her from performing all the basic mental requirements of unskilled work on a sustained basis." *Id.* However, the ALJ failed to discuss in her RFC determination the extent to which she relied on any of the medical opinions, or what, if any, of the opined moderate mental limitations she was accepting or rejecting. Thus, it is impossible to know what limitations the ALJ had determined did not reduce the occupational base of unskilled light work.

Magistrate Judge Peebles found that this was nevertheless harmless error because there "is ample authority for the proposition that a limitation to frequent or even occasional interaction with the public, coworkers, and supervisors would not erode the occupational base of unskilled work to any significant degree, and thus vocational expert testimony is not necessary to assess the impact of such a limitation." Dkt. No. 25 at 18 (citing *Denno v. Comm'r of Soc. Sec.*, No. 1:16-CV-1411, 2017 WL 5496069, *9-10 (N.D.N.Y. Oct. 6, 2017), *report and recommendation adopted* 2017 WL 5484662 (N.D.N.Y. Nov. 14, 2017); *Cook v. Comm'r of Soc. Sec.*, No. 15-CV-6408, 2017 WL 4409484, *11-12 (W.D.N.Y. Oct. 4, 2017); *Wasiewicz v. Colvin*, No. 13-CV-1026S, 2014 WL 5465451, *6 (W.D.N.Y. Oct. 28, 2014); *Vincent K.-B. v. Saul*, No. 3:20-CV-157, 2021 WL 535052, *5 (N.D.N.Y. Feb. 12, 2021)). Thus, Magistrate Judge Peebles concluded that "the inclusion of such limitations as opined by the medical sources here would not have impacted the ALJ's findings at step five in that they would not have precluded reliance on the Grids." *Id.* at 20 (footnote omitted). In other words, Magistrate Judge Peebles necessarily found that the ALJ's failure to state what moderate nonexertional limitations were included in her RFC finding was harmless error because, even if all of the moderate nonexertional limitations were included in the RFC finding, reliance on the Grids would not be precluded.

This Court has no issue with the general proposition that moderate nonexertional limitations related to *social functioning* may not necessarily preclude reliance on the Grids. *See*

12

SSR 85-15, 1985 WL 56857, *4 (1985) (unskilled jobs at all levels of exertion "ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis"). However, even disregarding all of the nonexertional limitations related to social functioning, the medical opinions in this case contain a significant number of additional moderate nonexertional limitations, including moderate limitations in Plaintiff's ability to (1) maintain a regular schedule; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (4) maintain attention and concentration for extended periods; (5) appropriately deal with stress; and (6) respond appropriately to changes in the work setting. Several of these findings occurred across multiple medical opinions. It seems entirely plausible to this Court that any one of these limitations could have "more than a 'negligible' impact on ... claimant's ability to perform the full range of work," requiring the testimony of a vocational expert. *Selian*, 708 F.3d at 421 (quoting *Zabala*, 595 F.3d at 411); *see also* SSR 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting"). If the ALJ intended to reject any or all of these moderate limitations, or give more or less weight to the medical opinions they come from, that intention and the supporting reasoning was not articulated in the ALJ's decision.

      Accordingly, remand is required for the ALJ to specify the degree to which she relied on

individual medical opinions, provide reasons for that weight, and set forth her reasoning in sufficient detail to permit meaningful judicial review. The ALJ must also reconcile any inconsistencies between the RFC finding and any medical opinion on which it purports to rely. If the ALJ determines that a vocational expert is not required at step five, the reasoning for that determination must be set forth in sufficient detail.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections and the applicable law, and for the reasons stated above, the Court hereby

**ORDERS** that Magistrate Judge Peebles' November 17, 2021 Report and Recommendation is **REJECTED in part** for the reasons stated herein; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED**, and this case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: February 25, 2022
Albany, New York

*[Signature]*
Mae A. D'Agostino
U.S. District Judge